## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DEREK JACKSON on behalf of himself and others similarly situated, | : : : | |
| Plaintiff, | : : | Case No. |
| v. | : : : | |
| ENTERPRISE FINANCIAL GROUP, INC. D/B/A SIMPLICITY PROTECTION, | : : : : | |
| Defendant. | : : / | |

## CLASS ACTION COMPLAINT

### Preliminary Statement

1. Plaintiff Derek Jackson ("Plaintiff" or "Mr. Jackson") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act, 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. In violation of the TCPA, Enterprise Financial Group, Inc. ("Enterprise") made automated telemarketing calls to a cellular telephone number of Mr. Jackson for the purposes of advertising their goods and services using an automated dialing system, which is prohibited by the TCPA. Enterprise also made multiple calls to Mr. Jackson, despite his presence on the National Do Not Call Registry, in further violation of the TCPA.

3. Plaintiff never consented to receive the calls, which were placed to him for telemarketing purposes. Because telemarketing campaigns generally place calls to thousands or

even millions of potential customers *en masse*, the Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of the Defendant.

4. A class action is the best means of obtaining redress for the Defendant's wide scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

### Parties

5. Plaintiff Derek Jackson is a resident of the Commonwealth of Massachusetts.

6. Defendant Enterprise Financial Group, Inc. Defendant regularly conducts business in this District, including through the making of telemarketing calls, as it did with the Plaintiff. The Defendant also regularly sells its extended warranty policies into this District.

### Jurisdiction & Venue

7. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

8. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District as the telemarketing calls at issue that gave rise to the Plaintiff's claims were made into this District.

### The Telephone Consumer Protection Act

9. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

<u>The National Do Not Call Registry</u>

10. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

11. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

The TCPA Prohibits Automated Telemarketing Calls

12. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

13. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

14. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations*

*Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

15. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

16. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

17. "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).

18. In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. Federal Trade Commission, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-nationaldo-not-call-registry-data-book-dnc.

19. *The New York Times* reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-riseillegal.html; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Them*, Wall St. J. (July 4, 2018), https://www.wsj.com/articles/why-there-are-so-manyrobocalls-heres-what-you-can-do-about-them-1530610203.

20. Even more recently, a technology provider combating robocalls warned that nearly half of all calls to cell phones in 2019 will be fraudulent. Press Release, First Orion, Nearly 50% of U.S. Mobile Traffic Will Be Scam Calls by 2019 (Sept. 12, 2018), https://www.prnewswire.com/news-releases/nearly-50-of-us-mobile-traffic-will-be-scam-calls-by-2019-300711028.html

**Factual Allegations**

21. Enterprise offers extended warranty services.

22. To generate placements, Enterprise relies on telemarketing.

23. However, Enterprise's contact with the potential new customers is limited, and third parties conduct the telemarketing.

24. One of Enterprise's strategies for telemarketing involves the use of an automatic telephone dialing system ("ATDS") to solicit business by third parties.

25. Enterprise engages third parties for the use of this equipment because it allows for thousands of automated calls to be placed at one time, and saves Enterprise money because its telemarketing representatives, who are paid by the hour, only talk to individuals who pick up the telephone.

26.     Through this method, Enterprise shifts the burden of wasted time to the consumers it calls with unsolicited messages.

Calls to Mr. Jackson

27.     Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

28.     Mr. Jackson's telephone number, (978) 879-XXXX, is assigned to a cellular telephone service.

29.     Mr. Jackson's telephone number, (978) 879-XXXX, is used for residential purposes.

30.     Mr. Jackson placed his cellular telephone number on the National Do Not Call Registry on August 30, 2018.

31.     Despite Mr. Jackson taking the affirmative step of registering his telephone number on the National Do Not Call Registry, he received automated telemarketing calls regarding extended warranty services on at least several dates in June of 2019.

32.     Finally, on June 14, 2019, Mr. Jackson engaged in the sales solicitation to identify the party making the calls.

33.     The first individual that identified an actual company calling stated he was "Craig Ryon from Simplicity Protection".

34.     Mr. Ryon was telemarketing for automobile extended warranty programs and quoted one such program to Mr. Jackson.

35.     He followed up with an email quote directly to Mr. Jackson from cryon@simplicityprotection.com on June 14 at 4:39PM (EDT).

36.     The email contains quote information and Mr. Ryon's contact information.

37. Furthermore, Simplicity Protection's information is listed at the bottom of the email.

38. The calls the Plaintiff received all followed a pattern.

39. After they were answered, there was a delay.

40. A click and pause was then played indicating that the dialing system was then sending the call to a live representative.

41. The calls often came from non-working caller ID numbers.

42. The fact that the call was made from a non-working number is indicative of the fact that the call was made with an ATDS, as a computer automated dialer would be needed to manipulate a Caller ID.

43. Other individuals have complained about receiving solicitation calls from the Defendant, including to the Better Business Bureau:

> Continued calls even though I am on the do official not call list. Continued calls even though I am on the do official not call list. If you return the call, it has a message to be placed on their do not call, which I did, and still get calls. I talked to the dealership and they said that they never share information.
>
> Daily calls for 3+ months - repeated asked to remove my name and had to talk to multiple people before even getting the company name. Wide range of phone numbers used to call me making it impossible to block the caller.

*See* https://www.bbb.org/us/tx/irving/profile/auto-warranty-processing/enterprise-financial-group-inc-0875-43000255/complaints (Last Visited August 16, 2019).

44. The foregoing are also indicative of the fact that the call was made with an ATDS.

45. Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up, they were charged for the calls and their privacy was improperly invaded.

46. Moreover, these calls injured plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of plaintiff and the class.

## Class Action Allegations

47. As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

48. The classes of persons Plaintiff proposes to represent are tentatively defined as:

CLASS 1

All persons within the United States to whom: (a) Defendant and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) promoting Defendant's products or services; (c) to their cellular telephone number; (d) using substantially the same telephone dialing system used to call Plaintiff, or an artificial or prerecorded voice; and (e) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

CLASS 2

All persons within the United States to whom: (a) Defendant and/or a third party acting on their behalf, made one or more calls in a twelve-month period; (b) promoting Defendant's products or services; (c) to their residential telephone number; (d) to a number that had been registered on the National Do Not Call Registry for at least 30 days prior to the first call (e) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

Excluded from the classes are the Defendant, and any entities in which the Defendant have a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned and any member of such judge's staff and immediate family.

49. The classes as defined above are identifiable through phone records and phone number databases.

50. The potential class members number at least in the thousands, since automated telemarketing campaigns make calls to hundreds or thousands of individuals a day. Individual joinder of these persons is impracticable.

51. Plaintiff is a member of the proposed classes.

52. There are questions of law and fact common to Plaintiff and to the proposed classes, including but not limited to the following:

    a. Whether Defendant violated the TCPA by using automated telemarketing to call cellular telephones;

    b. Whether Defendant violated the TCPA by making telemarketing calls to numbers on the National Do Not Call Registry;

    c. Whether Defendant placed calls without obtaining the recipients' prior consent for the call; and

    d. Whether the Plaintiff and the class members are entitled to statutory damages because of Defendant's actions.

53. Plaintiff's claims are typical of the claims of class members. Plaintiff's claims, like the claims of the Classes arise out of the same common course of conduct by Defendant and are based on the same legal and remedial theories.

54. Plaintiff is an adequate representative of the classes because his interests do not conflict with the interests of the classes, he will fairly and adequately protect the interests of the classes, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

55. Common questions of law and fact predominate over questions affecting only individual class members. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

56. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

57. The likelihood that individual members of the classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

58. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

### Causes of Action

#### Count One:
#### Violation of the TCPA's Automated Calling provisions
#### (On behalf of Plaintiff and Class 1)

59. Plaintiff incorporates the allegations from paragraphs 1 through 77 as if fully set forth herein.

60. The foregoing acts and omissions of the Defendant constitute violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of Class 1 using an ATDS and/or artificial or prerecorded voice.

61.     As a result of the Defendant's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of Class 1 presumptively are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute. The Court may award up to $1,500 if the violation was found to be "knowing or willful."

62.     Plaintiff and members of Class 1 are also entitled to and do seek injunctive relief prohibiting Defendant from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

**Count Two:**
**Violation of the TCPA's DNC provisions**
**(On behalf of Plaintiff and Class 2)**

63.     Plaintiff incorporates the allegations from paragraphs 1 through 77 as if fully set forth herein.

64.     The foregoing acts and omissions of the Defendant constitute violations of the FCC's regulation implementing subsection 227(c)(5) of the TCPA which prohibit anyone from making any call for telemarketing purposes to any residential number without the recipient's prior express written consent. 47 C.F.R. 64.1200(d).

65.     Plaintiff seeks damages of $500.00 for each such violation. *See* 47 U.S.C. § 227(c)(5).

66.     Plaintiff requests the Court to exercise its discretion and treble such damages for each willful or knowing violation.

**Relief Sought**

For himself and all class members, Plaintiff requests the following relief:

A. Certification of the proposed Classes;

B. Appointment of Plaintiff as representative of the Classes;

C. Appointment of the undersigned counsel as counsel for the Classes;

D. A declaration that Defendant's actions complained of herein violate the TCPA;

E. An order enjoining Defendant from making automated or pre-recorded calls;

F. An award to Plaintiff and the Classes of damages, as allowed by law;

G. Leave to amend this Complaint to conform to the evidence presented at trial; and

H. Orders granting such other and further relief as the Court deems necessary, just, and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

PLAINTIFF,
By his attorneys

*/s/ Anthony I. Paronich*
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (508) 221-1510
anthony@paronichlaw.com

Alex M. Washkowitz
Jeremy Cohen
CW Law Group, P.C.
188 Oaks Road
Framingham, MA 01701
alex@cwlawgrouppc.com